The next case today is Leron Porter v. Patricia Coyne-Fague, Appeal No. 21-1333. Attorney Mann, please introduce yourself for the record and proceed with your argument. Thank you. Good morning. My name is Robert Mann. I would request to reserve two minutes for rebuttal, if that's acceptable. Yeah, it is. I represent Mr. Porter, who was charged in state court with murder and other offenses. He went to trial, lost, received lengthy sentences, life plus consecutive life plus years. This appeal is limited to one issue. When jury selection took place, the issue came up with respect to the state using a peremptory challenge to excuse juror 103. It is the plaintiff or appellant's position that that use of the peremptory violated the defendant's rights under Batson. When the challenge was made, the defense lawyer for Mr. Porter said he was relying on Batson. I just want to go into a little bit of what really happened. This is an unusual Batson challenge in the sense that the argument is not whether the prosecutor offered a non-pretextual reason for excusing the juror, but rather whether the prosecutor's own words indicate that race was a factor in making the decision to excuse juror 103. Your argument, as I understand it, Mr. Mann, is focused on step two of Batson. Step two and even really step three because the judge went to step three. Right. But step two, it seems to me, your argument is really determinative if we accept your argument. Right. Well, I agree. There's no question I think that step one was satisfied. We're at step two then. What the prosecutor said, and it was repeated in the briefs by both sides, was basically, this is the state prosecutor now referring to what the juror said. Basically, he was saying, what he was saying is that, and again, this is the state's take, he's a member of the African-American community, the defense at the bar is a member of the African-American community, he's the only one on the panel who is, and if he were to vote guilty, there could be consequences to it. I would submit, respectfully, I may be wrong, but if he were to vote not guilty, I don't think he would have any consequences. It's clear that what was a factor for the prosecutor in this case was the fact that the defendant was African-American and the juror was African-American. The courts that considered this challenge, the trial court, the Royal Supreme Court, both said there were reasons that would have justified the excuse of this juror. The Royal Supreme Court even said, I think in a footnote, that it might have been appropriate to make a motion for cause, to excuse the juror for cause. But, in fact, the issue is, what reason did the prosecutor give? And here, the reason the prosecutor gave was inextricably tied to the race of the defendant and the race of the juror. Was that step two argument made either in the state court or to the district court that the state of Rhode Island seemed to say it was not? To the superior court in Rhode Island, the trial court, the defense lawyer said it's Batson, Your Honor, and then he went on to extol some of the virtues of Juror 103 that he seemed serious that he could adjudicate the case. So, the short answer is, I don't think that the defense lawyer said, here the reason offered by the prosecutor is not even a contextual question. It's a point-blank admission that race is a factor. I don't think he said it in those words. Four minutes remaining. Is that a problem for you, and if not, why not? Is that a problem you said for me? Yeah, and if not, why not? It's not a problem, and the reasons I don't think it's a problem are several. One is that the defense lawyer said it's Batson, and everybody assumed it was Batson, and at no point did the state say, well, we have to decide whether or not the reason offered by the prosecution was pretextual. It's not pretextual because he said he did make comments about where the juror worked. There's no question he made comments about where the juror worked. Let me just put it in these terms. The Rhode Island Supreme Court seemed to be of the view that you, that the, well, it's a little funny the way the Rhode Island Supreme Court puts it in the sense that it doesn't quite say the prosecutor had this view. It says that there are reasons that would be legitimate without quite saying, ever identifying exactly what the reasons were that the prosecutor had. But the, I guess, issue that to me seems worth you addressing is, insofar as the record could possibly be read differently than you're suggesting it should be read, in which the statements by the prosecutor, which identify the race of the juror and identify the race of the defendant, but don't directly say, and because of that race of the defendant, he will vote this way and therefore I'm removing him. Is it incumbent on the defense counsel to say my reason for saying there's a Batson problem is that the reason he's given for rejecting him is not pretextually a race-based one, but on its face race-based and he hasn't offered a neutral reason. Does the defense counsel have to say that so that the trial counsel and the Rhode Island Supreme Court have an opportunity to address that point directly? My first response is, I don't think there was any question in anybody's mind that the defense was raising a Batson challenge. But I guess it's just the nature of the Batson challenge that was being raised that I'm wondering whether there might have been a question about. Part of my response is that when you're picking a jury in a murder case, the tempo of the case is that you say it's Batson and nobody says, wait a minute, what do you mean it's Batson? Everybody goes on with the assumption that everybody knows what Batson is. It's not the defense lawyer's obligation at that point to say to the state that that was a pretextual reason. He communicated what the position was that it's Batson and the state never said, even in the appeal to the Rhode Island Supreme Court, that there was any confusion about the application of the Batson. Isn't that really the determinative point? The state has never contended that the Batson challenge here was not appropriately framed or that they were unaware of what the Batson challenge was. Having said it in the brief in our court, didn't say it in the brief to the Rhode Island Supreme Court. In fact, they went further. They went on to defend on the basis that the Rhode Island Supreme Court followed the mandate of Batson. But in the arguments to the Rhode Island Supreme Court, was the argument made to the Rhode Island Supreme Court that the state had never offered a non-base-based reason? I'd have to go back and look at the state's brief in more detail. Nobody ever suggested that the defense had to do more to alert the fact that there was a Batson challenge. Am I out of time? You are. But if you want to just close in one minute, you may. You don't have to because you saved two minutes for rebuttal as well. I'll just wait and see if I need it for rebuttal. Thank you. Thank you. Thank you. At this time, Mr. Mann, please mute your camera and your microphone. And Mr. Bush, please go ahead and unmute and introduce yourself on the record to begin. Good morning. Christopher Bush, the Office of Attorney General in Rhode Island. For the respondent, Patricia Ann Coyne-Faig. The state would ask this court to affirm the judgment of the district court denying Mr. Porter's habeas petition. As I'm sure this court is well aware, in order to sustain a claim for habeas relief, a petitioner must establish that the state court decision was contrary to clearly established federal law, constituted an unreasonable application of clearly established federal law, or was based on an unreasonable determination of facts. Mr. Bush, let's see if we can put to rest the last dialogue with Mr. Mann. The state, in its brief and in this case as I read it, has not made a procedural challenge that the objection that Mr. Mann now raises, the Batson objection, was procedurally defaulted at any stage of the litigation. That's correct, Your Honor. We have not made that argument, either in the district court or here. I think in our brief to this court, what we did try to point out was, and this flowed a little bit from the district court's ultimate conclusion, that the issue of the unreasonable application step or prong was debatable, that this court specifically found that it couldn't determine or decide that no other jurist or fair-minded jurist could reach a contrary conclusion. I think in the context of making that argument or emphasizing that point, we simply wanted to emphasize that when the prosecutor in this case made the reference to the fact that the juror and the defendant were both members of the African-American community, in response to that, there was no suggestion that that somehow evidenced the fact that the preemptory challenge was exercised based on the race of the juror. Well, it was that comment, when that was said, that's what prompted the Batson objection, wasn't it? Well, in this case, the party skipped, it looks like, the first step of Batson and went straight to the offer of the race-neutral justification. That's the problem that I'm having with this case, as to whether the prosecutor offered a race-neutral explanation. It seems to me that the prosecutor offered a race-explicit explanation. The juror is African-American, the defendant is African-American, he's got every reason therefore to return a not-guilty verdict, he won't get any blowback, he will get blowback if he returns a guilty verdict. That, to my mind, and perhaps you can convince me otherwise, is a race-explicit explanation. Well, I guess I would respond in two respects, Your Honor. First, the issue and the reason for, as articulated by the prosecutor, the exercise of the preemptory challenge relates to the fact that the juror indicated or expressed concern about retaliation in the workplace, and or that he would be subject to false allegations if he were selected to serve on the jury. That might have been a very good reason to excuse him for cause. That is correct, and that is what the Rhode Island Supreme Court noted in footnote 7 of its decision, that he could have been excluded for cause, and I think under the Hernandez decision from the Supreme Court, that that in and of itself is indicative... The cause couldn't have been that he's African-American. No, no, no, it would be the fact that the juror... I understand, so the relevant question is, on your account, what is the reason the prosecutor suddenly refers to him being African-American and the juror being African-American in explaining why there's a basis for the strike? It's a little bit unclear, Your Honor. It's a little bit unclear as to whether he's simply noting for the record that the juror and the defendant are both members of the African-American community, because it's in the middle of a paragraph or multiple paragraphs explaining the basis for the challenge. And I think that the court, excuse me, that the prosecutor specifically references on... But here's what, here's what, that'd be one thing if he was just noting that. That's not how I read what the record says. The record says, this is the prosecutor. The prosecutor says, essentially, what he was saying, that's the juror, is that, and then he says, again, this is the state's take on what the juror was saying. So the state is now saying, the juror was saying he's a member of the African-American community. The defendant at the bar is a member of the African-American community. He's the only one who does the panel as is, and if we were to vote guilty, there could be consequences of it. So the state is saying that it understands the juror to have said his vote would be influenced by his race. Now, the juror never said that. He did not. So how could you read the record to say that the prosecutor is simply noting his race, given what the prosecutor actually said, which is I'm not noting his race. I'm giving you my take on the motivation of the juror. Well, it's unclear whether the reference to the race of the juror and the defendant relates to what the jurors expressed concern about returning a guilty verdict, which he does say in response to questions by the prosecutor, and this is at page 196 and 197 of the transcript, 38 or 39 of the addendum, the juror does indicate that he feared retaliation based on the verdict. The juror does not mention his race. That's correct. The juror does not mention his race. So the prosecutor says, I think the juror is making this decision because of his race. Doesn't that what the prosecutor says? Well, I think it's a little bit unclear as to whether he's linking the fact that the juror felt that he would be retaliated against based on a guilty verdict. This is the state's take. The juror was saying he's a member of the African-American community. The defendant at bar is a member of the African-American community. He's the only one in the panel who is, and if he were to vote guilty, there could be consequences to it. Yes. And the juror did say that he feared consequences if he voted guilty in this case. The juror said that he feared consequences, but he didn't link it to finding the defendant guilty. He said it didn't make any difference. He was concerned whether he found them guilty or innocent. Guilty or not guilty. Nor did he mention his race. He did not mention his race. He did mention on a number of occasions that it wouldn't matter whether it was a guilty or not guilty verdict that he feared retaliation. But there was a specific colloquy with the prosecutor in which he specifically says that if the jury came back guilty, he would face retaliation because of that verdict. And that's at 38 and 39 of the addendum. And I think if you go back to Judge Talia's question, the explanation for the peremptory challenge, at the very beginning, and this is on page 202 of the transcript, the state bases its challenge on the following. The juror ultimately indicated that he has a feeling and is under the belief that as a consequence of his verdict, he may face repercussions. Or he would face, I think the word he used, your honor, was he would get blowback, quote-unquote. Blowback and concern based on his verdict. There's the paragraph that your honor, Chief Judge Barron referenced about containing the reference to the community. But the prosecutor goes on and says, essentially, although he may have said he could deliver a verdict in this case, he expressed, as stated on the record, if the defendant was guilty, the person at the ACI that got word of that could cause him concern. But the problem is, you're just not, I guess I just need you to deal with that first sentence. The sentence is, essentially, this is from the prosecutor. The state's take, so you couldn't have clearer language about what the state thinks the reason for the juror being biased is. And the state's take on why he's biased is that the juror was saying that he's a member of the African American community, the defendant, that the bar is a member of the African American community. He's the only one on the panel who isn't. If he were to vote guilty, there could be consequences to it. So what's your answer to that? Why isn't that just a statement by the prosecutor that my take is this juror is biased because of his race? Because I think, at least for purposes of Batson, the important point here is that the juror did express concern about retaliation, did express concern that there might be people at Eleanor Slater who would make up false allegations, regardless of the verdict, multiple times, and on the one occasion did link it to a guilty verdict. And that is why the prosecutor in this case exercised a preemptory challenge. There was nothing about that statement in that paragraph that caused the defense counsel at trial to stand up and suggest that the prosecutor was interpreting what the juror had said to be based on race. I don't understand that. The defense counsel had made the Batson challenge, which per se means that he's taken the position that the prosecutor is linking the challenge to race. Why does he have to stand up and say something further? The prosecutor has just confirmed what the defense counsel feared when he made the objection. The point I was making was that the defense counsel didn't interpret it the way that this court is now suggesting it should be interpreted. When he did stand up and respond to the race-neutral basis, he didn't suggest that the state hadn't met its burden at that step. He didn't suggest that the state hadn't articulated a race-neutral basis. It was a short and brief suggestion that this was simply a Batson issue and that that was it. Nothing else has been said that has indicated he should have been stricken. That ignored all the comments that the juror said about the retaliation, but he doesn't suggest or link in any way the comment about the race of the juror or the race of the defendant as being supportive of his claim that this was violative of Batson. Certainly, the trial justice never interpreted it that way. The trial justice was more than convinced that this had everything to do with the prospective jurors' expressed concern about retaliation and consequences. That's precisely what the Supreme Court landed on, that the trial justice got that right and there was a sufficient basis in the record to support that conclusion, which is obviously, as this court well knows, also based in large part or in some part on a determination of the credibility of the prosecutor. At the very least, with respect to Stage 2, I think the district court got it right that this is at least open to interpretation. It cannot be said that no reasonable jurist would determine that this reached the same conclusion as the state court did in this case. For the reasons we've articulated in our briefing this morning, the state would ask this court to affirm the denial of Mr. Porter's habeas petition. Thank you. Mr. Bush, may I just follow up? Yes. I'd like to follow up just on one very small point with respect to the questions that Chief Judge Barron was asking Mr. Mann about exhaustion in the state court of the Step 2 claim. Judge Selye asked you about referring to it as whether the state has interposed an objection of procedural default. You said it has not. Are you expressly waiving any failure to exhaust? I'm asking just to know whether Mr. Mann needs to say anything about it during his rebuttal. We have not briefed that issue in the district court. We have not briefed that issue on appeal. I don't know whether, based on that, we will have forfeited that argument. I'm asking whether you've expressly waived. We have not expressly waived that argument. We have not raised it. Are you expressly waiving? We need to know whether we need to deal with it. I think you need to address the second prong. That's where the district court landed and that's ultimately what we're arguing we satisfy. Does that mean we don't need to address whether the Rhode Island Supreme Court was apprised of the second prong issue in the way it's now being formulated? We didn't raise that issue in the state court. We didn't argue waiver in the state court. I think that Mr. Mann did raise essentially the argument he's raising in his brief to this court before the Rhode Island Supreme Court. I don't believe that we asserted the raise or waive rule under the state procedures. There are some circuits who say, with respect to exhaustion in front of the state court, it has to be expressly waived by the state. It's waivable, but it has to be expressly waived for us to bypass it. I'm just trying to find out if you are expressly waiving it. I guess sitting here now, I will not expressly waive it. Just note that we haven't asserted that as a defense. You may not be expressly waiving, but maybe I misheard you. I thought you conceded the point. I thought you just now said he did raise it to the Rhode Island Supreme Court. He did raise it to the Rhode Island Supreme Court. It's the Supreme Court. He did not raise the specific point that he's making to the Rhode Island Superior Court. But he argued in the Supreme Court the same argument he's making here, that the reference to the juror's raise was violative of Batson. Okay. Thank you. Thank you, Attorney Bush. At this time, please mute your audio and video. Attorney Mann, you have a two-minute rebuttal. Please turn on your camera and your microphone and reintroduce yourself to begin. Robert Mann for Mr. Porter. Unless the court has further questions, I think I've made the point that I wanted to make, which is that the Batson claim has always been made. There's never a suggestion that the defense waived the Batson claim or anything like that. It's clear that everybody, when you look at that testimony, knew what was meant when the defendant's lawyer said Batson. There wasn't any confusion about what he meant. Thank you. Thank you. Thank you, counsel. That concludes the argument in this case.